IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES GYPSUM COMPANY ) ) ) Plaintiff, ) ) v. ) ) ) ECTEK INTERNATIONAL, INC., ) ) Defendant. ) ) | No. 1:19-cv-596 <br><br> District Judge Steven C. Seeger <br><br> Magistrate Judge Jeffrey I. Cummings |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion by plaintiff, United States Gypsum Company ("USG"), to compel amended responses to various discovery requests. (Dckt. #143). Defendant, Ectek International, Inc., filed a response on March 9, 2022 (Dckt. #150). On April 18, 2022, USG filed a second motion to compel seeking documents that Ectek had allegedly agreed to produce, but had not yet turned over. (Dckt. #155). For the reasons set forth below, USG's motions to compel discovery are granted in part and denied in part.

**I.    BACKGROUND**

USG is a Chicago-based corporation that develops and sells structural subfloor panels ("panels"), which are used in the construction of commercial and residential buildings throughout the United States. The USG product relevant to this action is a 3/4-inch, concrete panel, which was designed to "create 1-, 2-, and 3-hour fire-rated floor-ceiling assemblies." (Dckt. #132 at 3). Importantly, USG's panel is classified as "non-combustible" by ASTM International, a private international standards organization that promulgates safety standards for a variety of consumer products. For a building material to be considered non-combustible under

1

this standard, it must withstand "the ASTM E136," a thirty-minute test. The International Building Code ("IBC") has also adopted the ASTM E136 as its recommended standard for non-combustibility. (Dckt. #132 at 6).

Ectek, a Canadian corporation, is also in the business of manufacturing and selling structural panels, including the "Armoroc Structural Cement Panel." Armoroc is a cement-bonded particle board that competes directly with USG's panel in the United States. Ectek has sold Armoroc to Ameriform, a Massachusetts-based LLC, which has then resold Armoroc to customers in the United States.

USG alleges that, when selling Armoroc to American customers, Ectek has misrepresented the product in a variety of ways, most egregiously by advertising it as a "non-combustible" building material despite the fact that Armoroc has not passed the thirty-minute ASTM E136. Ectek responds that "there is no universally accepted, applicable definition of 'non-combustible' for structural cement panels." (Dckt. #24 at 3). Instead, Ectek argues that what qualifies as a non-combustible material varies by jurisdiction. Ectek further asserts that at least one jurisdiction has classified materials as non-combustible if they pass a "*modified* ASTM E136," meaning they are able to withstand test conditions for ten, rather than thirty, minutes. (Dckt. #24 at 4). USG appears to concede that jurisdictions can, theoretically, adopt any combustibility standard they want. However, it argues that this jurisdictional freedom means little when the IBC has been adopted in all fifty states and requires an unmodified ASTM E136. (Dckt. #143 at 12).

USG filed suit against both Ectek and Ameriform on January 29, 2019, seeking compensatory and punitive damages. In October 2020, USG and Ameriform entered into a settlement agreement whereby USG's claims against Ameriform were dismissed with prejudice.

(Dckt. #114). USG then filed a Second Amended Complaint on August 20, 2021, dropping all claims related to Ameriform's conduct and seeking only prospective injunctive relief against Ectek. (Dckt. #132). USG's remaining claims against Ectek allege false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2; as well as unfair competition under Illinois common law.[1] (Dckt. #132 at 1-2). Essentially, USG claims that (1) Ectek's representations to consumers that Armoroc is non-combustible are untrue; (2) Ectek continues to make these misrepresentations; and (3) these misrepresentations have led consumers to purchase Armoroc, thus damaging USG. (*Id.* at 6).

Ectek filed a counterclaim against USG on May 6, 2019, accusing USG of false advertising and unfair competition under various federal and state laws. Ectek alleges that USG "engaged in a systematic effort to mislead and confuse consumers . . . by repeatedly spreading false claims that [USG's] [panel] product was the only 'Non-Combustible' product available on the market, that the ASTM E136 test is a universally mandated test for combustibility for [panel] and [cement-bonded particle board] products, and that Armoroc could never be used in construction requiring non-combustible materials." (Dckt. #24 at 5, 8). Ectek specifically cites two of USG's promotional materials as promulgating these claims: a 2012 white paper and a 2016 white paper.[2] Ectek alleges that USG's statements "impacted Ectek's sales of Armoroc and

---

[1] USG's additional allegation – arguing that Ectek committed copyright infringement in 2017 by creating a "submittal sheet" substantially similar to a 2016 USG submittal sheet – is largely unrelated to the present motion to compel discovery.

[2] USG's 2012 white paper claimed that cement-bonded particle boards do not meet the standard for non-combustibility, generally; a panel can only be considered combustible if it can pass an unmodified ASTM E136 test; and Armoroc is combustible. The 2016 white paper contained the same claims and included a

the purchasing decisions of Ectek's customers and potential customers." (Dckt. #24 at 8). Ectek seeks compensatory, punitive, and injunctive relief.

Discovery in this matter is ongoing. USG served supplemental interrogatories and requests for production on June 20, 2019, to which Ectek responded on August 17, 2020. (Dckt. #143-1). Ectek served amended responses on January 26, 2022. (Dckt. #143-5). The parties are "still negotiating over the appropriate time-scope for ESI searches." (Dckt. #143 at 3). On February 28, 2022, the District Court granted one final extension of discovery and ordered fact discovery closed on April 30, 2022, and expert discovery closed on August 25, 2022. (Dckt. #147).

## II.  LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018). Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Discoverable information is not limited to evidence admissible at trial. Fed.R.Civ.P. 26(b)(1).

---

link to Armoroc's website as an example of a manufacture that uses the phrase "non-combustibility" even though their panels are considered combustible.

### III. ANALYSIS

USG asserts that the Ectek has failed to adequately respond to seventeen requests for production and eleven interrogatories. According to USG, Ectek agreed to produce responses to thirteen of the requests at issue, but has failed to do so. The Court will address each category of contested discovery requests in turn.

### A. USG failed to explain how Interrogatory No. 1 and Request for Production No. 1 are relevant to the claims or defenses at issue.

On October 15, 2007, Ameriform entered into an exclusive distribution agreement with Jilin Tiancheng Ltd., a Canadian manufacturer. According to an email from an Ectek representative, that agreement was "effectively transferred" to Ectek by Jilin Tiacheng on May 23, 2011. (Dckt. #143-7 at 36). USG's Interrogatory No. 1 and Request for Production No. 1 relate to this transfer:

> **Interrogatory No. 1:** Describe the transfer of assets and liabilities from Jilin Tiancheng Canada, Ltd. to Ectek, as referred to in [the email]. Please include the following information:
>
>     a. Identify any contracts or agreements associated with this transfer;
>     b. Any individuals who were involved in the transfer;
>     c. Any notices given related to the transfer; and
>     d. Identify the assets and/or liabilities that were transferred
>
> **Request for Production No. 1:** All documents related to the transfer of assets and liabilities from Jilin Tiancheng Canada, Ltd. to Ectek, as referenced in [the email].

Ectek argues that, even if this assumption of contractual obligations constitutes a "transfer" – which, according to Ectek, it does not – this request is overbroad because any dealings between Jilin Tiancheng and Ectek are irrelevant to the remaining disputes between Ectek and USG. USG responds that documents "regarding *any* sale or transfer agreements related to Armoroc" are relevant to this action, as are documents regarding any people or assets involved in such transfers. (Dckt. #143 at 5) (emphasis added).

5

"While the federal discovery rules have an expansive reach, they are not without limits, and relevancy is perhaps the most important of those constraints." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *4 (N.D.Ill. Feb. 20, 2018). As noted above, for discovery to be relevant, it must be related to the claims or defenses at issue in a case, rather than "its general subject matter." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019). Before addressing these overbreadth objections, then, the Court will outline the parties' positions.

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). "[T]he cause of action is for competitors, not consumers," and such competitors "may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations.'" *Id.*, quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). To succeed on its claims, USG must prove that (1) Ectek makes statements misrepresenting the non-combustible nature of Armoroc; (2) the statements have actually deceived or have the tendency to deceive a substantial segment of consumers; (3) the deception is likely to effect consumer's purchasing decisions; (4) Ectek causes the false statement to enter interstate commerce; and (5) confusion will likely result from Ectek's violation. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F.Supp. 1481, 1489-90 (D.Minn. 1996). Ectek must prove the same elements with regard to USG's representations about combustibility standards but, because Ectek seeks compensatory damages in addition to

injunctive relief, it must show that it was injured as a result of the false statement by either a direct diversion of sales, or a loss of goodwill associated with its product.[3]

With these elements in mind, the Court disagrees with USG's argument that *any* documents regarding the sale of Armoroc are relevant to its claims. Because USG asserted no more specific reason that the Jilin Tiancheng agreement would relate to Ectek's communications with consumers and potential consumers of Armoroc, USG has failed to meet its burden of establishing relevancy here. *See Hills v. AT&T Mobility Services, LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D.Ind. July 22, 2021) ("[W]hen the discovery request is overly broad, or relevancy is not apparent, the requesting party must establish relevancy."); *Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB, 2019 WL 6522885, at *3 (S.D.Ind. Dec. 4, 2019) ("A party moving to compel production carries the initial burden of establishing, with specificity, that the requested documents are relevant."). Ectek need not amend its response to Interrogatory No. 1 or Request for Production No. 1.

> **B. Ectek must supplement its responses to Interrogatory No. 2 and Request for Production No. 2, as narrowed by the Court.**

**Interrogatory No. 2:** Identify any and all contractual relationships between Ectek and any other entity, for the manufacture and/or shipment of Armoroc to Ectek or Ameriform.

**Request for Production No. 2:** All documents, including any and [all] contracts between Ectek and any other entity, for the manufacture and/or shipment of Armoroc to Ectek or Ameriform.

The crux of the parties' dispute regarding these requests – as well as several other requests at issue here – is the appropriate temporal scope for discovery. Ectek maintains that

---

[3] Both parties also assert claims under the Illinois Uniform Deceptive Trade Practices Act, which a party violates when, in the course of business, it "disparages the goods, services, or business of another by false or misleading representation of fact" or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2.

7

because USG's only remaining claims rest on the allegation that Ectek *presently* misrepresents its products to American consumers, "contracts for the manufacture or distribution of Armoroc before 2019 are not relevant." (Dckt. #150 at 7). Ectek further alleges that it "has not contracted to sell to a customer to the [US] nor shipped into the [US] any Armoroc . . . panels since at least 2018," so no information responsive to these requests exists. (Dckt. #143-4).

There are two holes in Ectek's logic. First, the fact that USG seeks only prospective relief does not necessarily limit discovery to the last three and a half years. Although USG must eventually allege a nonspeculative likelihood of future harm to sustain its claims, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014), "past injury may be relevant in determining the likelihood of future harm," *Lewis v. Tully*, 99 F.R.D. 632, 641 (N.D.Ill. 1983) (citing *Kolender v. Lawson*, 461 U.S. 352 (1983)); *see also Aguilar v. Immigration and Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 259 F.R.D. 51 (S.D.N.Y. 2009) (granting discovery of past complaints where the moving party sought only injunctive relief, noting past events may reveal an ongoing pattern giving rise to a credible threat of future harm). At this stage, USG need only show that the requested information is relevant to its claims. The second problem with Ectek's argument regarding the proper temporal scope of discovery is that USG's quest for injunctive relief is not the only relevant claim. *See Nexxus Products Co. v. CVS New York, Inc.*, 188 F.R.D. 11, 14 (D.Mass. 1999) ("[P]arties are entitled to discover information relevant to a defendant's defenses and counterclaims."). Ectek's counterclaim accuses USG of damaging Ectek by misrepresenting Armoroc as combustible. (Dckt. #24 at 5, 8). Ectek's sales records are certainly relevant to the question of damages.

Despite these findings, the Court agrees with Ectek that USG's discovery requests are overbroad as worded. First, the requests do not include a time frame. USG suggests that they

8

should be limited to information and documents from January 2014 through present. (Dckt. #143 at 5). The Court finds that this scope is proper where Ectek began selling Armoroc to Ameriform in 2011 and USG alleges that it continues to misrepresent Armoroc's qualities today.

As for the content of the disclosure, while communications surrounding the sale of Armoroc from Ectek to Ameriform are certainly relevant, contracts for the sale of Armoroc *to* Ectek are not. Although USG is particularly interested in the identification of Ectek's "importer" and "Chinese manufacturer," USG fails to explain – and the Court does not see – how this information bears on the question of whether Ectek misrepresents its product to potential users or the question of whether Ectek has been damaged by USG's campaigns. *See Chem-A-Co., Inc. v. Earth Science Laboratories, Inc.*, No. 4:04-cv-15-AS, 2005 WL 8171435, at *5 (N.D.Ind. July 13, 2005) (finding that discovery related to plaintiff's manufacturing processes was not relevant to defendant's counterclaim alleging unfair competition and false or misleading description under the Lanham Act).

Accordingly, Ectek must only identify all contracts in its possession, custody, or control for the shipment of Armoroc from Ectek to Ameriform. The disclosure should occur by April 26, 2022, and should include contracts from January 2014 to present, along with any documents related to those contracts. This includes documents showing that Ectek's sales of Armoroc within the United States "declined due to USG's campaign to convince the construction industry that Armoroc and other cement-bonded particle board products cannot be used for structural components in Type I or Type II construction," which Ectek has already agreed to produce, and which USG sought in its second motion to compel. (Dckt. #150 at 8; Dckt. #155 at 5).

9

### C. Ectek must supplement its responses to Interrogatory No. 3 and Request for Production No. 3, as narrowed by the Court.

**Interrogatory No. 3:** Identify any and all instances where Ectek's or Jilin Tiancheng Canada Ltd. inquired into the retention of any entity for the purpose of testing Armoroc related to its combustibility, as well as the performance and outcome of any such tests, from January 1, 2000, to the present.

**Request for Production No. 3:** All documents in any way related to Ectek's or Jilin Tiancheng Canada Ltd.'s inquiry into the retention of any entity for the purpose of testing Armoroc related to its combustibility, as well as the performance and outcome of any such tests, from January 1, 2000, to the present.

USG argues that "[t]he combustibility of Armoroc is a central issue in this case, since USG alleges that Ectek has promoted Armoroc as non-combustible, when it is not." (Dckt. #143 at 8). The Court would phrase it differently seeing as whether Armoroc is combustible or not is entirely dependent on what the *definition* of combustibility is. Both parties apparently agree that Armoroc does not satisfy the unmodified ASTM E136 test but satisfies a shortened ten-minute version. Thus, the central question is whether Armoroc could truthfully be described as either combustible or non-combustible given the definitions used within the industry.

In any case, documentation of testing related to Armoroc's combustibility is relevant to the question of whether Armoroc may be considered non-combustible under *any* standard and how (or if) Ectek chose to share this knowledge with its customers. Ectek must identify any tests related to combustibility that have been performed on Armoroc since January 1, 2000.[4] Ectek must also describe the outcome of such tests and provide any related documentation. This includes documents related to the August 16, 2006 VTEC test report 100-2471 Rev. 1.0, which

---

[4] Although Ectek began selling Armoroc to Ameriform in 2011, it may possess earlier tests that have informed its marketing decisions since. Ectek does not argue that the composition of Armoroc has changed since 2000, so tests conducted from that period would still be relevant. Accordingly, the Court finds that the timeframe suggested by USG is appropriate. Of course, Ectek need not produce any information not in its possession, custody, or control within the meaning of Rule 34.

Ectek has already agreed to produce and which USG sought in its second motion to compel. (Dckt. #155 at 5).

> **D. Ectek must supplement its responses to Interrogatory No. 6 and Request for Production No. 6.**
>
> **Interrogatory No. 6:** Provide all information related to Jilin Tiacheng's decision to list European standards EN 634-1 and EN 634-2 as the only "specifications" with which Armoroc would comply in Exhibit B of its distribution agreement with Ameriform. To the extent any modifications to that list of specifications were ever made, please provide information regarding those modifications.
>
> **Request for Production No. 6:** All documents in any way related to Jilin Tiacheng's decision to list European Standards EN 634-1 and EN 634-2 as the only "specifications" with which Armoroc would comply in Exhibit B of its distribution agreement with Ameriform. To the extent any modifications to that list of specifications were ever made, please provide those modifications.

USG argues that information related to Jilin Tiancheng's decision to list only European standards in the "specifications" section of the distribution agreement is discoverable because "[t]he issue of Armoroc's compliance (or lack thereof) with these specifications is highly relevant to this litigation." (Dckt. #143 at 8).

The Court does not expect every document related to the decision-making process of two other entities to be in Ectek's possession, custody, or control. However, the information is relevant as Jilin Tiancheng's decision to include one set of standards but not another could shed light on whether Ectek knew that its product did not meet the standards that were not included. To the extent that this information and these documents are in Ectek's possession, custody, or control, it must disclose them by April 26, 2022. This includes the communications between Zhang and Kavanagh which Ectek has already agreed to produce, (Dckt. #155-1 at 8), and which USG sought in its second motion to compel, (Dckt. #155 at 6).

11

    **E.**    **Ectek must supplement its responses to Interrogatory No. 7 and Request for Production No. 7.**

**Interrogatory No. 7:** Identify any and all communications with government agencies regarding Armoroc, including the physical properties of Armoroc. Please include the following information:

    a.    The government agency involved;
    b.    The individuals from Ameriform or Ectek involved with communication with the government agency;
    c.    A description of the communication; and
    d.    A description of the information provided to the government agency regarding Armoroc.

**Request for Production No. 7:** All documents sent or received by and between Ectek and any governmental agency regarding the physical properties of Armoroc.

USG argues that communications between Ectek and governmental agencies are "obviously relevant to this litigation and plainly discoverable" because "Ectek's representations to any entity, including governmental agencies, about Armoroc . . . would (or could) constitute evidence of Ectek's conduct in advertising and promoting Armoroc structural subfloor panels as non-combustible." (Dckt. #143 at 9). The Court agrees that any communications about Armoroc's combustibility made by Ectek to government officials are discoverable. That being said, communications unrelated to combustibility bear little relevance to either party's claims. Accordingly, Ectek must supplement its responses to these requests by April 26, 2022, but need only include communications with government officials regarding the combustibility of Armoroc.

    **F.**    **Ectek must supplement its responses to Interrogatory No. 8 and Request for Production No. 8.**

**Interrogatory No. 8:** Identify any and all communications with the End User or Potential End User regarding the combustibility or non-combustibility of Armoroc, as defined by the International Building Code or any individual Authority Having Jurisdiction, as referenced by Ectek in its counterclaim.

12

**Request for Production No. 8:** All documents sent or received by and between Ectek and any End User or Potential End User of Armoroc regarding the combustibility or non-combustibility of Armoroc, as defined by the International Building Code or any individual Authority Having Jurisdiction, as referenced by Ectek in its counterclaim ("AHJ").

Ectek first objects that these requests constitute fishing expeditions where USG has yet to identify a single customer or potential customer whom Ectek has misled regarding Armoroc's combustibility. (Dckt. #150). While the strength of USG's claim is an appropriate consideration for Ectek's pending motion to dismiss, *Engel v. Buchan*, 710 F.3d 698, 699 (7th Cir. 2013) (to survive a motion to dismiss, complaint must include sufficient facts so the court can reasonably infer that the defendant is liable), it bears little on the question of what Ectek must produce during discovery.

Ectek next argues that conducting "an untargeted search of all of its electronic communications for the past eight or more years to try to locate and produce all communications to any potential . . . Armoroc customer" would be exceptionally costly and time-consuming. (Dckt. #150 at 11). However, the Court finds that limiting the requests to communications to *American* End Users and Potential End Users from January 2014 to present will sufficiently alleviate this burden. Ectek has repeatedly opined that it has had "little direct contact" with American purchasers of Armoroc. *See* (Dckt. #143-1 at 19) ("Ectek primarily sold Armoroc to Ameriform, and Ameriform would then resell to Ameriform's own customers."); (Dckt. #132 at 11) ("any Illinois or other customer in the US that was in any way misled regarding Armoroc would have been misled by Ameriform, which at all relevant times was the United States distributor of Armoroc."). Ectek has also repeatedly alleged that it "has not contracted to sell to a customer in the United States nor has it shipped Armoroc . . . into the United States since at least 2018." (Dckt. #150 at 11).

Accordingly, if the request is narrowed to American users, Ectek would only need to search through four years of communications (2014 through 2018). Furthermore, the material would be largely limited, as Ectek "had little direct contact with relevant US end users or potential end users of Armoroc as USG defines those terms." (Dckt. #143-1 at 19). This does not constitute an undue burden given the needs of the case. *See Papst Licensing GmbH & co. KG v. Apple, Inc.*, No. 6:15-cv-1095, 2017 WL 1233047, at *3 (N.D.Ill. Apr. 4, 2017) ("[O]ne claiming undue burden must do more than intone the phrase."); *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D.Ill. 1990) ("[T]he objecting party must specify the nature of the burden and provide specific explanations as to why the interrogatory cannot be answered.").

These communications are clearly relevant to the question of whether Ectek is currently misrepresenting Armoroc (or is likely to do so in the future), as they will reveal what information Ectek typically shares regarding Armoroc's combustibility. They may also "aid in identifying which of defendant's customers would be likely to have knowledge of the representations which defendant allegedly made in the sales of its products," should Ectek disclose communications with customers other than Ameriform. *See Midway Mfg. Co. v. Artic Intern., Inc.*, No. 80-C-5863, 1981 WL 1390, at *4 (N.D.Ill. June 2, 1981) (ordering defendant to respond to discovery requests seeking "all communications with customers or prospective customers" relating to the sale of certain products).

By April 26, 2022, Ectek must disclose any communications that (1) occurred after January 1, 2014, (2) were between Ectek and any American End User or Potential End User of Armoroc, as defined by USG, and (3) discussed the combustibility of Armoroc. Ectek must also produce any documents related to such communications. This includes the documents "containing communications from 2019 to the present with any [American] End User regarding

the combustibility or non-combustibility of Armoroc," which Ectek previously agreed to disclose, (Dckt. #155-3 at 12), and which USG sought in its second motion to compel, (Dckt. #155 at 6).

### G. Ectek must supplement its responses to Interrogatory No. 13 and Request for Production No. 13.

**Interrogatory No. 13:** Identify any and all communications wherein Ectek advised anyone that Armoroc could be considered a non-combustible building material as building elements listed in Table 601 of the IBC (2018), pursuant to the New York City Building Code when used in Type I or Type II construction in New York City, after January 1, 2014.

**Request for Production No. 13:** All documents wherein Ectek advised anyone that Armoroc could be considered a non-combustible building material as building elements listed in Table 601 of the IBC (2018), pursuant to the New York City Building Code when used in Type I or Type II construction in New York City, after January 1, 2014.

Ectek again argues that these requests are overbroad where USG seeks only injunctive relief and overly burdensome where USG asks Ectek to search through years of communications. The Court agrees that the request is overbroad, but only to the extent that it does not limit the scope to American consumers. As noted above, Ectek maintains that it has little communications with American users of Armoroc and that it has not sold or shipped Armoroc to any American customer since at least 2018. The Court also notes that these requests seek a very specific type of communication which should not be difficult to identify, especially once Ectek has compiled information responsive to Interrogatory No. 8.

The information sought in these requests is highly relevant to USG's claims, as USG specifically alleges that: (1) Ectek "has represented in jurisdictions all over the United States that Armoroc is and has been considered 'non-combustible' in New York City," and (2) the New York City building materials allowance under which Armoroc would be considered non-combustible is "long-defunct." (Dckt. #132 at 7-8). Again, this Court finds that Ectek's past

actions may be indicative of likely future harm and are, therefore, sufficiently relevant to USG's claim for injunctive relief to be subject to discovery.

Therefore, Ectek must disclose any communications (including documents) made after January 1, 2014, wherein Ectek advised anyone that Armoroc could be considered a non-combustible building material as building elements listed in Table 601 of the IBC (2018), pursuant to the New York City Building Code when used in Type I or Type II construction in New York City. This disclosure must occur by April 26, 2022.

### H. Ectek need not respond to Interrogatory Nos. 14, 15, and 16, or Request for Production Nos. 14, 15, and 16.

Interrogatory Nos. 14, 15, and 16 and their corresponding Requests for Production each ask Ectek to identify specific buildings in which Armoroc was used as a "non-combustible" product.[5] Request No. 14 asks Ectek to identify structures built with Armoroc in jurisdictions that classify "non-combustible" materials as products able to pass a non-modified ASTM E136 test; Request No. 15 relates to jurisdictions that adopted the IBC standard of non-combustibility; and Request No. 16 asks Ectek to identify buildings in jurisdictions that had not adopted the IBC standard of non-combustibility.

Although relevance is construed broadly, discovery must be proportional to the needs of the case "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). "Proportionality, like

---

[5] Interrogatory No. 14, for example, asks Ectek to "[i]dentify any buildings in the United States (including the addresses) in which Armoroc was used as a 'non-combustible' product where non-combustible products able to pass a non-modified ASTM E136 test were required to be used as building elements listed in Table 601 of the IBC (2018) by the [jurisdiction]."

other concepts, requires a common sense and experiential assessment." *Generation Brands, LLC v. Decor Selections, LLC*, No. 19 C 6185, 2020 WL 6118558, at *4 (N.D.Ill. Oct. 16, 2020). These requests would require Ectek to compile a list of nearly every building in which Armoroc has ever been used in America, despite the fact that Ectek does not sell Armoroc directly to American customers. Even if this were possible, the exercise would be highly disproportionate to the needs of a case focused on Ectek's communications with its customers.

I. **Ectek must respond to Request for Production No. 22.**

**Interrogatory No. 22:** All documents (including all correspondence) between Ectek and LRI that preceded LRI's report of April 16, 2019 (ECTEK 000085-000087), including any and all drafts of the April 16, 2019 report.

Ectek objected to this request, arguing that it prematurely seeks documents shared between Ectek and its consulting expert, calls for documents that are not within Ectek's possession or control, and is overbroad. (Dckt. #143-1 at 59). USG responds that it is "not requesting expert materials or correspondence with Ectek's litigation experts," but rather "documents that are plainly relevant to this litigation and narrowly tailored to the 2019 report previously produced by Ectek." (Dckt. #143 at 13). The Court agrees that the documents in question should be produced.

Even presuming that the documents sought were protected from disclosure by the consulting expert privilege provided by Rule 26(b)(4)(D), any such protection was waived when Ectek – for reasons unknown – produced the 2019 report to USG as part of its Rule 26(a)(1) initial disclosures. (*See* Dckt. #143-7 at pp. 100-102). The concept of waiver applies to Rule 26(b)(4)(D), which is "simply an application of the work product rule." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012). In *White v. Electrolux North America, Inc.*, for example, the plaintiff was entitled to depose the defendant's consultant outside of expert

17

discovery because, among other reasons, the defendant had previously shared the consultant's report with the plaintiff. Case No. 13 C 1617, 2014 WL 1365424, at *2 (N.D.Ill. Apr. 7, 2014) (noting that the fact that defendant "agreed to share Mr. Hecksher's report – this was intentional and clearly not inadvertent – is conspicuously inconsistent with any claim that the report was protected. The whole idea behind the protection of trial preparation materials is to create 'a protected area in which the lawyer can prepare his case free from adversarial scrutiny.'") (citation omitted).

Because Ectek produced the 2019 report, its communications with LGI are subject to discovery. *See Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 457-58 (N.D.Ill. 1974) ("A party cannot be allowed, after disclosing as much as he pleases, to withhold the remainder."). Accordingly, Ectek must produce the communications and documents that are in its possession, custody, or control and related to LGI's April 16, 2019 report by April 26, 2022.

### J. The parties must submit a joint status report confirming the production of electronically-stored information.

USG asserts that Ectek agreed to produce certain documents in response to Request for Production Nos. 4, 5, 18, 19, 20, and 21, as well as an amended response to Interrogatory No. 20. Ectek responds that it has not produced these documents because – at USG's insistence – the parties agreed to exchange electronically-stored information ("ESI") discovery simultaneously and USG has yet to produce any.

Apparently, then, each party is withholding a significant amount of relevant discovery on the grounds that the other party is also withholding discovery. This must end as the close of discovery is near. By April 27, 2022, the parties are ordered to file a joint status report

confirming that their ESI has been exchanged and setting forth what discovery – if any – remains to be completed prior to the close of fact discovery on April 30, 2022.

### K. Ectek must produce the relevant documents that it has already agreed to produce.

USG's second motion to compel is largely redundant, as it seeks much of the same information that was targeted in its first motion to compel (namely, amended responses to Request for Production No's 2, 3, 6, 8, 18, 19, 20, 21, and 22). (Dckt. #155). To the extent that USG seeks documents that have not already been addressed in this order, the motion is now moot as Ectek only refused to produce those documents until the Court ruled on USG's first motion to compel. Even so, the Court orders Ectek to disclose the relevant documents that it has already agreed to disclose and that are identified in USG's second motion to compel, (Dckt. #155), by April 26, 2022, to the extent that it has not disclosed the same information or documents in response to other requests. *See Muchin v. Lincolnshire Bath & Tennis Club, Inc.*, No. 91 C 746, 1991 WL 264605, at *1 (N.D.Ill. Dec. 6, 1991) (finding that referencing prior answers is sufficient where interrogatories seek the same information).

## CONCLUSION

For the foregoing reasons, plaintiff's motions to compel (Dckt. #143, 155) are granted in part and denied in part. By April 26, 2022, defendant is ordered to amend its responses to Interrogatory Nos. 2, 3, 6, 7, 8, and 13, and to produce documents in response to Request Nos. 2, 3, 6, 7, 8, 13, and 22 in accordance with this decision. Defendant must also produce any documents it has already agreed to produce by April 26, 2022. Plaintiff's motions to compel are otherwise denied. By April 27, 2022, the parties shall submit a joint status report confirming that their ESI has been exchanged and setting forth what discovery – if any – remains to be completed prior to the close of discovery on April 30, 2022.

**ENTERED:** April 19, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**